IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:08-cr-289 |
| v. | ) | |
| | ) | |
| RAYMOND WALLACE SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

Pending before the Court is Defendant Raymond Wallace Smith's MOTION TO SUPPRESS EVIDENCE (Document No. 31). The government filed a response in opposition to the motion (Document No. 33). The Court held an evidentiary hearing on June 1, 2009, at which police officer David Sisak testified. After the transcript of the hearing was filed, both parties submitted memoranda of law (Document Nos. 40, 41). The motion is now ripe for disposition.

Factual Background

Smith is charged in a one-count indictment at Crim. No. 08-289 with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On March 18, 2008, at approximately 5:15 p.m., officer Sisak was driving his police car outbound on the Martin Luther King busway in Pittsburgh, Pennsylvania. Near the Homewood bus stop, Sisak was flagged down by an older black man in his 40s, who was frantic, scared, and standing in the middle of the busway. This person informed Sisak that "some guy, he just tried to shoot some other guy. He's got a gun and they are shooting." The informant described the shooter as a black male wearing a black leather jacket, a black hat and tan khaki pants. The informant further stated that the shooter

had "cut down" from the busway north in the direction of Frankstown Road and that the intended target had run south toward Penn Avenue. Sisak did not obtain the informant's name or other details, but instead drove off immediately to try to find the alleged shooter.

It took Sisak 1-3 minutes to get to the next exit from the busway (approximately four blocks away) and double back on a parallel road to the predicted location of the reported shooter. When Sisak reached the intersection of Finance Street and North Homewood Avenue, there was nobody in sight. Sisak therefore turned left, proceeded through an underpass beneath the busway, looped through a small housing area called Jonathan Court, and then drove back through the underpass.

On Sisak's return through the underpass, he saw a black male (Defendant Smith) who was wearing a black hat, black jacket and khaki pants – which fit the description provided by the informant. When Smith saw the police car, he reversed his course and started walking in the opposite direction. Sisak thought he saw what looked like the end of a gun that Smith was shoving into his pocket. Sisak stopped the police car, opened the door, and said "Stop right there." As Smith turned, Sisak confirmed that there was a black pistol grip protruding from Smith's left pocket. Sisak then drew his gun and told Smith to put his hands up and to not move. Smith was visibly nervous and put his hands up to shoulder height, but then broke eye contact, replied: "F*ck you," and ran away at a full sprint toward Jonathan Court. Sisak sprinted after him, took one shot with a taser which was ineffective, and then tackled Smith to the ground and jumped on top of him approximately 20 seconds later. Sisak held Smith in a bear hug, gave knee and elbow strikes, and tried to grab Smith's hands to prevent him from drawing his gun. Backup arrived very shortly thereafter and Smith was subdued and handcuffed. Officers recovered a .380

caliber pistol from Smith's pocket.


Legal Analysis

As an initial matter, the Court notes that the dispute has been narrowed considerably. Smith acknowledges that in *California v. Hodari D*, 499 U.S. 621, 626 n.3 (1991), the Supreme Court held that a "seizure" is not effected until the suspect either submits to authority or the officer applies physical force. *See also United States v. Thomas J. Smith*, 2009 WL 2257456 (Slip Opinion July 30, 2009) ("momentary compliance" prior to flight does not manifest submission to police show of authority).[1] Accordingly, Smith concedes that he was not seized before his attempt to flee, notwithstanding Sisak's pre-chase actions to restrain him by a show of authority.

Smith argues that he was "seized" as early as the moment when Sisak attempted to taser him under the busway and no later than the time he was tackled. Smith then contends that Officer Sisak lacked probable cause for this arrest, primarily because the informant was anonymous, and based on the factors set forth in *United States v. Brown*, 448 F.3d 239, 249-50 (3d Cir. 2006) (citations omitted), to wit:

> (1) The tip information was relayed from the informant to the officer in a face-to-face interaction such that the officer "had an opportunity to appraise the witness's credibility through observation."
>
> 2) The person providing the tip can be "held responsible if her allegations turn out to be fabricated."
>
> (3) The content of the tip is not information that would be available to any

---

[1] This precedential opinion was issued subsequent to the briefs filed by the parties, and is therefore not discussed by either side. To avoid confusion, the Court will use the full case name.

    observer. A "not truly anonymous" tip is accorded greater weight when "the specific details of language, type of activity and location matched a pattern of criminal activity known to the police, but not to the general public," and "the tip could not have been generated by the general public, nor based solely on observation."

    (4) The person providing the information has recently witnessed the alleged criminal activity.

    (5) The tip predicts what will follow, as this provides police the "means to test the informant's knowledge or credibility."

Defendant further points to the gap in time between the informant's report and the encounter between Sisak and Smith, and argues that Smith's act of running away does not contribute to the probable cause analysis, citing Justice Stevens' dissent in *Illinois v. Wardlow*, 528 U.S. 119, 128-135 (2000) (the majority held that headlong flight *is* suggestive of wrongdoing).

    The government's position is that the initial encounter between Sisak and Smith did not constitute a seizure because Smith did not submit to the officer's commands. As noted above, Smith now concedes that the government is correct on this issue. The government then argues that the attempted use of the taser during the chase did not effectuate a seizure because it was ineffective in restraining Smith. More generally, the government contends that Smith's flight – along with the totality of the circumstances – provided Sisak with reasonable suspicion to believe that criminal activity was afoot. The government further contends that Sisak had probable cause to believe that Smith had violated numerous laws at the time he was tasered and tackled, including resisting arrest, simple assault, aggravated assault, and carrying a firearm without a license.

    The Court of Appeals explained in *Thomas J. Smith* that not every interaction between police officers and citizens is protected, and that the Fourth Amendment protects against

"unreasonable" seizures.  There are two steps to the inquiry: (1) was there a seizure; and (2) if so, was that seizure reasonable?  Slip Op. at 7.

As to the first question, there was indisputably a seizure, which occurred sometime after Smith attempted to flee.  The Court need not resolve the dispute as to whether the seizure occurred upon use of the taser or (seconds later) when Sisak tackled Smith.  Under either scenario, Smith was indisputably "seized" *after* his attempt to flee such that his flight can be considered in determining whether the seizure was reasonable.  In *Thomas J. Smith*, the Court explained: "The timing of the seizure is significant – if the seizure occurred after suspicious behavior such as flight, this factors into our analysis of whether there was reasonable suspicion to justify the seizure."  Slip Op. at 7.  Similarly, as the Court explained in *Brown*, 448 F.3d at 245:

> Flight from a lawful frisk or arrest can contribute to a finding of reasonable suspicion; thus, the timing of the seizure could tip the finding in favor of one party or the other. *See, e.g., Wardlow*, 528 U.S. at 124, 120 S.Ct. 673 ("[h]eadlong flight ... is ... suggestive of [wrongdoing]"); *United States v. Brown*, 159 F.3d 147, 149 (3d Cir.1998) ("flight combined with other factors may support a warrantless stop and frisk").

Turning to the second question, Sisak clearly acted reasonably in his seizure of Smith. He had the following information:  (1) a tip was provided from a face-to-face informant whose credibility Sisak had an opportunity to appraise through observation; (2) the informant provided a specific, verifiable description of the shooter's clothing; (3) the informant claimed to have recently witnessed the alleged criminal activity; (4) the informant predicted the general location and direction of the shooter;[2] (5) Smith was wearing an outfit that matched the description

---

[2]The Court acknowledges that the informant could not have been held responsible for a falsified tip and that there is no evidence that the tip matched a pattern of criminal behavior previously known to the police, but not the general public.  *See Brown*.

provided by the informant in all respects; (6) Smith was in the vicinity of the shooting; (7) only a few minutes had elapsed; (8) Smith was visibly nervous; (9) Smith was carrying a firearm; (10) Smith refused to answer questions; and (11) Smith fled.  Thus, it was entirely reasonable for Sisak to believe that Smith was the person described by the informant as the busway shooter.  In *Thomas J. Smith*, the officers were merely conducting a "high visibility patrol" and had no basis to suspect criminal behavior when they initiated contact and began asking questions of a pedestrian.  The suspicious behavior consisted of vague responses to the repeated question "Where does your girlfriend live?"  The officers then asked the suspect to place his hands on the hood of the police car.  When the suspect fled, the officers chased him and recovered a gun and drugs.  The Court of Appeals concluded that this seizure was reasonable and reversed the decision to suppress this evidence.  By comparison, the seizure by Officer Sisak in this case was far more justified.

In accordance with the foregoing, Defendant Raymond Wallace Smith's MOTION TO SUPPRESS EVIDENCE (Document No. 31) is **DENIED**.  A pretrial conference will be held on August 13, 2009 at 11:00 a.m.  SO ORDERED this 4th day of August, 2009.

BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge

cc:   Michael Leo Ivory, AUSA
      Email: michael.ivory@usdoj.gov

      Patrick M. Livingston
      Email: micklivingston@choiceonemail.com